ALLEN, Chief Judge.
This is an appeal from a final order dissolving a temporary injunction.
Richard C. Davis is an attorney and a Justice of the Peace in Pinellas County. He is also the son of Honorable Clair A. Davis, State Attorney for the Sixth Judicial Circuit, composed of Pinellas and Pasco Counties.
This case had its genesis in an order from former Governor Farris Bryant at the request of Clair A. Davis, the State Attorney aforesaid, to appoint State Attorney Gordon G. Oldham, Jr., of the Fifth Judicial Circuit of Florida, to proceed to the Sixth Judicial Circuit for the purpose of investigating Richard C, Davis in regards to his duties as Justice of the Peace in Pinellas County. Subsequently, Governor Haydon Burns issued an order assigning, authorizing and empowering Gordon G. Oldham, Jr., State Attorney, to proceed to the Sixth Judicial Circuit and thereupon, until the completion of the above mentioned matters, to then and there perform all matters and things necessary to be done and performed by the State Attorney of the Sixth Judicial Circuit in said matters, and “he, the said Gordon G. Oldham, Jr., under and by virtue of the authority hereof, is hereby vested with all and singular the powers and prerogatives conferred by the Constitution and Laws of the State of Florida upon State Attorneys by virtue of an order of the Governor of this state.”
Mr. Oldham, in performance of his investigation, had issued subpoenas duces tecum for production by various banks of records of bank accounts in the name of Richard C. Davis or joint accounts in the names of Richard C. Davis and his wife, as well as a subpoena addressed to a lawyer, who, the complaint alleged, was retained by Davis to represent him in certain estate matters wherein Davis was either the attorney or administrator or executor.
Richard C. Davis and his wife, Barbara B. Davis, obtained a temporary injunction ex parte to enjoin the banks and the lawyer from divulging any information as to any bank accounts of Davis or Davis and his wife, except as to any bank accounts in his name as Justice of the Peace.
Mr. Oldham sought to secure a writ of prohibition in this court. We held that prohibition would not lie as the circuit judge had jurisdiction to act in this matter.
Subsequently, testimony was taken before the trial court and the court announced that since, in issuing the temporary injunction it had taken as true the sworn allegations of the complaint, it was up to the defendant to proceed. The court also announced that there was no question that the special State Attorney, Oldham, had sub *791 poena power and that the hearing would concern itself with whether or not he was acting within the scope of the executive order and whether or not the records sought were necessary based upon the investigation he had made of the plaintiff, Richard C. Davis, in regard to his duties as Justice of the Peace.
Much of the testimony concerned evidence against Davis that formed much of the basis for the investigation — two estates in which, as Justice of the Peace, Davis had ordered the banks holding these estate accounts to turn the funds over to him. At the bottom of one order, after the funds were received by Davis, is the following notation:
“Received from the Bank of Clearwater the total sum of $1,222.09 for the account of Ida M. Brown.
s/ Richard C. Davis.”
This receipt was signed individually and not as Justice of the Peace or in any other official capacity. A similar notation was said to appear at the bottom of the other order.
The crux of the plaintiff’s argument is that once the' estate funds were turned over to Richard C. Davis and he had signed a receipt for them, they ceased to be public funds (a requirement of Sec. 812.10 Fla. Stats. F.S.A.) and became private funds, and the special State Attorney, authorized to investigate Richard C. Davis, in regard to his duties as Justice of the Peace had no authority to investigate where these funds went. The State Attorney’s argument is that the order permitting Davis to receive the funds were orders entered by Davis as Justice of the Peace and under authority of that office; that the monies were received by him as Justice of the Peace and that thereafter there is no record; that to hinder the special State Attorney from conducting his investigation leaves the alternative of having to accept “Davis’ word for it.”
The form of the order entered by Davis is as follows:
“IN THE JUSTICE OF THE PEACE COURT, SECOND DISTRICT PIN-ELLAS COUNTY, FLORIDA.
In re:
IDA MARTHA BROWN, deceased.
TO: ALL PERSONS, FIRMS, CORPORATION, THEIR AGENTS, SERVANTS AND EMPLOYEES IN POSSESSION OF ASSETS, GOODS AND MISCELLANEOUS PERSONAL PROPERTIES OF IDA MARTHA BROWN, DECEASED
You and each of you are hereby authorized and directed to deliver and/or pay over to Richard C. Davis, as Justice of the Peace, pursuant to Section 936, Florida Statutes, all goods, wares, cash, securities, or other miscellaneous personal properties which you hold, said properties being the property of said IDA MARTHA BROWN, deceased, to be held by the said Richard C. Davis as Justice of the Peace according to law.
DONE AND ORDERED in Chambers at Largo, Pinellas County, Florida, this 15th day of November, A.D. 1962.
s/ Richard C. Davis
JUDGE”
“Nov. 15, 1962
“Received from the Bank of Clearwater the total sum of $1,122.09 for the account of Ida M. Brown.
s/ Richard C. Davis”
It will be observed that the order was signed by Richard C. Davis, Judge, while the receipt for the money from the Bank of Clearwater was signed by Richard C. Davis.
The circuit judge, at a hearing on September 16th, made the following statement:
“My problem is, Mr. Mosley, that at the time I issued the injunction it was strictly based upon the sworn complaint. And since that time I have read law and studied law that I was not familar with *792 At the time I issued it. And therefore it is my opinion that I in this civil action cannot go behind any of the actions of the State Attorney. That would have to come up at a later time. Not in a Civil action but in another type of action. And therefore the only question that I have to determine is whether he exceeded his authority, and with the testimony he has given me he deemed it necessary to actually have the bank records, and therefore it is not just an invasion of personal property rights, but in turn it is necessary in his investigation. Therefore I would say that I would have to dissolve the injunction.”
At another hearing held the 29th day of September, the circuit judge commented:
“Well, I am stating the opinion — that he had the order and he didn’t find where the funds went, and he has the right to find out. If he feels it is part of the investigation, and since the order was duly issued, as Justice of the Peace, I think he has the right to find out what happens to the funds if it in turn is not in the Justice of the Peace funds, then in his investigation, and not in mine, he would determine what he would or wouldn’t do. It might be that he has gotten facts now that he won’t need it but my point is he has established sufficient facts, in my opinion, that he, as an investigating officer, could go ahead and do as he sees fit. Now, it might be that he doesn’t do right. Sometimes — I don’t always do right, as far as going by what I think the law is, but that is up to another Court to determine, and I don’t think I can tell him how he has to run an investigation.”
The State Attorney Oldham, during the course of his investigation, found a similar order was entered by Davis in the case of another deceased person, to-wit: Forest E. Carpenter, identical in all respects with the order in Ida Martha Brown’s Estate, save and except the change in the name. Likewise, an identical receipt was appended to-the bottom of the Carpenter order.
State Attorney Oldham also found no-record in the office of the Justice of the Peace which showed any receipt of these-funds by the Justice of the Peace Davis, nor did any such record show where the money went. Richard C. Davis appeared before Mr. Oldham and testified very freely about all matters that transpired in the office of the Justice of the Peace, except as to matters pertaining to the whereabouts, of the funds received from the Ida Brown Estate and the other estates involved, and in these matters he declined to disclose any information on the grounds that such information consisted purely of matters personal to him and not in anywise connected with the office of Justice of the Peace. This situation resulted on subpoenas duces, tecum being issued to certain banks named in the complaint requiring these banks to produce for examination their records of all accounts in the name of Richard C. Davis, individually or in the joint names of' Richard C. Davis and his wife, Barbara B. Davis.
In his order dissolving the temporary injunction issued against State Attorney Old-ham, Judge Leavengood stated:
“The Court is of the opinion that the two executive orders by the Honorable Farris Bryant, dated December 22, 1964, and the Honorable Hayden Burns, dated May 3, 1965, under the provisions of Section 27.14, Florida Statutes, assigned Gordon G. Oldham, Jr., to the discharge of the duties of the State Attorney of the Sixth Judicial Circuit of Florida relative to the specific matters set out in said executive orders and that, as to said matters, Gordon G. Oldham, Jr., has all of the power and authority of the State Attorney of the Sixth Judicial Circuit.
“The Court is further of the opinion that said executive orders are clear and unambiguous and that the plaintiff in this cause cannot go behind the language-of said orders and attempt to show that *793 the said Gordon G. Oldham, Jr., was appointed to serve in any capacity other than that reflected in the orders themselves.
“From the testimony of Gordon G. Oldham, Jr., the Court finds as a fact that, in order to complete his investigation, it is necessary that Gordon G. Old-ham, Jr., be allowed to interrogate the witnesses subpoenaed and to examine the records covered by the subpoenas duces tecum heretofore issued.
“Mr. Oldham, in his testimony before the Court, likened a state attorney to ‘a one-man grand jury/ and the Court subscribes to this view in so far as it is applicable to investigations relating to criminal activities. A state attorney, armed with his broad discretion and with his subpoena powers, can probe into the private lives and affairs of individuals in order to ascertain whether there is probable cause to believe that they have committed a crime. In the event he finds there is probable cause, there is no problem because he can file an Information charging them with a crime or present the matter to a grand jury which may or may not return an Indictment. However, the question arises as to what happens to the Information concerning the private affairs of individuals acquired by the state attorney conducting an investigation when the state attorney does not file an Information or a grand jury does not return an Indictment. The Court is of the opinion that such information is confidential and cannot be disclosed by the state attorney, his assistants and employees, to anyone. To hold otherwise would allow the state attorney, in effect, to make public information regarding the private affairs of individuals which he secured by the use of his vast powers and would result in the unwarranted and harmful invasion of the right of privacy of citizens. For this reason, the Court is of the opinion that Gordon G. Oldham, Jr., should be enjoined from revealing to to anyone other than his assistants and employees or a grand jury, if he deems advisable, any information obtained by him as the result of his investigation of Richard C. Davis in regards to his duties as Justice of the Peace in Pinellas County, Florida, unless and until an Information is filed charging Richard C. Davis with a crime or an Indictment is returned by a grand jury.
“This Court finds that the Proffer made by the Plaintiffs would not affect this Court’s findings.
“IT IS THEREUPON, ORDERED, ADJUDGED AND DECREED as follows:
“1. The temporary injunction entered in this cause be and the same is hereby dissolved.
“2. Gordon G. Oldham, Jr., his assistants and employees, be and they are hereby restrained and enjoined from revealing to anyone other than a grand jury any information which the said Oldham has acquired or may acquire as a result of his investigation of Richard C. Davis unless and until an Information is filed against the said Richard C. Davis charging him with a crime or an Indictment is returned by a grand jury.
“3. It is further ordered that the testimony of Gordon G. Oldham, Jr., taken before this Court in this cause be sealed and that the same not be opened or examined except in the event an appeal is taken in this cause and an appropriate order entered by the appellate court.”
We had occasion, in the case of Dinnen v. State, Fla.App. 1964, 168 So.2d 703, to reflect upon the investigatory powers of a grand jury. This power is analogous to the power of the State Attorney in the instant case. In our affirmance, we quoted from Judge Augustus Hand’s opinion in In re Black, 47 F.2d 542 (2d Cir.1931), as follows :
“ ‘The appellant insists that, before a witness is compelled to testify before a grand jury, he should be apprised of the *794 subject-matter of the inquiry or the name of the persons against whom the inquiry is addressed, and that he should not be called upon to go unaided by counsel to an inquiry which is unlimited in scope and for which he is entirely unprepared. But the privilege of a witness against self-incrimination is personal. Neither at a trial nor before a grand jury is he entitled to have the aid of counsel when testifying. It is hard to see then why he must be warned of the nature or extent of the testimony which is likely to be called for. A witness is not entitled to be furnished with facilities for evading issues or concealing true facts. Every bona fide investigation by a grand jury seeks to ferret out crime and criminals. To detect crime and to present charges against the guilty requires the most ample power of investigation. Frequently neither the nature of the crime itself, nor the identity of criminals can be forecast. To be compelled to state either in advance we think is likely unnecessarily to impede investigation and obstruct the administration of justice.
“ ‘ * * *
“ 'If the appellant is right in his contention, a witness, though he had been notified of a proposed inquiry, would be justified in refusing to continue his testimony if the examination developed facts calling for an incursion by the grand jury into some entirely new field not mentioned in the subpoena and as to which he had not been warned. His need of counsel would be as great in such a situation as it is here if the grand jury set out upon an inquiry which he had been unable to foresee. Such a result would certainly be absurd; yet it would be quite inevitable if appellant’s contention be sound. A witness must rely for any needed protection upon his personal privilege against self-incrimination to be invoked when the occasion arises.’ ”
If the contentions of the appellant in the istant case were valid, it would render nugatory the investigative powers of the prosecuting attorneys m this State. Aliy lawyer experienced in the handling of criminal matters knows the advantages of delay. For instance in the present case, this investigation was initiated by Governor Bryant, continued by Governor Burns, and so, for a period of practically two years, the State Attorney had had his hands tied by legal actions.
We have studied the briefs of the parties, the testimony adduced before the able trial judge, and concur in his order dissolving the temporary injunction heretofore entered in this case.
Affirmed.
LILES, J., and WILLIS, ROBERT E., Associate Judge, concur.